United States District Court
Eastern District of Michigan
Southern Division

United States of America,

Criminal No. 21-20610

Hon. Mark A. Goldsmith

v.

D-4 Bishop Allen,

Defendant
_________________________________/

**United States' Sentencing Memorandum**

Bishop Allen participated in a scheme to illegally obtain firearms over the Internet using stolen identities and credit card information. After obtaining stolen credit card information online, Allen's co-defendants—Chauncey Williams, Mike Chahoua, and Antonio Jackson—purchased firearms using the stolen card numbers, recruiting straw purchasers to put the firearm sales in their names. Williams, Chahoua, and Jackson then directed straw purchasers—including Allen—to pick the guns up in person and lie on the ATF forms in the process. Allen and his co-defendants then either kept the firearms for their own use or sold them for a profit. The conspiracy successfully obtained at least 54 firearms in this manner from November 2020 through February 2021.

The government believes Allen's guideline range is 70 – 87 months' imprisonment. In consideration of Allen's role in this conspiracy and the

seriousness of these offenses, the government believes a sentence at the bottom his guideline range is "sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

## I. STATEMENT OF FACTS

### *A. Online FFL Fraud Scheme*

Allen, his co-defendants, and others, were part of a scheme to obtain and use stolen credit card information to purchase firearms from online retailers. In total, the conspiracy was responsible for obtaining at least 54 firearms, worth a combined total of over $30,000. Allen was personally responsible for straw purchasing over a dozen of those firearms.

Generally, when purchasing firearms online from an out-of-state federal firearms licensee (FFL), the purchaser must have the firearm shipped to an in-state brick-and-mortar FFL, usually for a nominal fee. The purchaser then must appear in person at the local FFL and complete an ATF Form 4473 (Firearms Transaction Record).

The leaders and organizers of the conspiracy—Chauncey Williams, Mike Chahoua, and Antonio Jackson—obtained the stolen credit card information and identity information, and then used it to place online orders for firearms in the names of straw purchasers they had recruited, including Allen.

Upon picking up the firearms, the straw purchasers—including Allen—had to lie on the ATF 4473, because they knew they were not actually the purchaser of the firearm, in a few different ways. First, they knew that the leader and organizer they were working with was the "purchaser" of the firearm, but they also knew, or had reasonable cause to believe, that the firearm was going to be transferred to a prohibited person. And they further knew or had reasonable cause to believe the firearms were being purchased with stolen credit cards or through other illegal means.

Both the online and local FFLs were unaware that the firearms were purchased with stolen credit cards until later, when the transactions were "charged back" or reversed when the person whose credit card information had been stolen noticed the fraudulent charges. The FFLs ultimately suffered the financial loss for the firearms.

Allen was an integral part of this conspiracy. Indeed, without straw purchasers like Allen agreeing to pick up the firearms, these crimes would never have occurred.

## II. BACKGROUND

On September 23, 2021, Allen was one of ten defendants named in a sixty-seven count Indictment filed with the Court. Allen was charged in 14 counts as follows: Count 1: Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349; Count 5:

Wire Fraud, 18 U.S.C. § 1343; Counts 18, 19, 20, 21, 22, and 23: Making or Inducing a False Statement in the Acquisition of a Firearm, 18 U.S.C. § 922(a)(6); and Counts 45, 46, 47, 48, 49, and 50: Possessing/Receiving a Stolen Firearm, 18 U.S.C. § 922(j). (ECF No. 1).

On February 6, 2024, Allen pleaded guilty to Count 1, Count 18, Count 19, Count 20, Count 21, Count 22, and Count 23 of the Indictment pursuant to a written Rule 11 plea agreement. (ECF No. 304). The Court accepted Allen's guilty plea and took the plea agreement under advisement.

## III. THE ADVISORY GUIDELINES

The Probation Department calculated Allen's guideline range to be 57 – 71 months' imprisonment. (PSR ¶ 67). However, the government believes Allen's guideline range is 70 – 87 months. The PSR currently assigns Allen a total offense level of 25, and a criminal history category of I. However, the government believes Allen should be assigned a total offense level of 27, and a criminal history category of I, yielding a range of 70 – 87 months instead.

The two-level difference comes from the application of a guideline enhancement under USSG § 2K2.1(b)(5) for firearms trafficking, which the Sentencing Commission recently altered with the November 2023 sentencing guideline amendments.

Under the old version of 2K2.1(b)(5), a defendant could receive a 4-point enhancement for trafficking firearms. Application Note 13 specified that 2K2.1(b)(5) should apply if the defendant:

(i) Transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and

(ii) Knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—

I. Whose possession or receipt of the firearm would be unlawful; or

II. Who intended to use or dispose of the firearm unlawfully.

USSG § 2K2.1(b)(5), Application Note 13, 2021 Guidelines Manual. The Application Note goes on to define an "Individual whose possession or receipt of the firearm would be unlawful" to mean "an individual who (1) has a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence; or (ii) at the time of the offense was under a criminal justice sentence . . . ." *Id.*

Under the new version of 2K2.1(b)(5), a defendant could receive either a 2-point enhancement or a 5-point enhancement for firearms trafficking, depending on certain factors. Specifically, the newly added 5-point enhancement is appropriate where the defendant:

B. transported, transferred, sold, or otherwise disposed of, or purchased or received with the intent to transport, transfer, sell, or otherwise dispose of,

two or more firearms knowing or having reason to believe that such conduct would result in the receipt of the firearms by an individual who:

(I) had a prior conviction for a crime of violence;

(II) was under a criminal justice sentence at the time of the offense; or

(III) intended to use or dispose of the firearms unlawfully.

USSG § 2K2.1(b)(5), 2023 Guidelines Manual.

Effectively, the 2023 Amendments to USSG § 2K2.1 changed the trafficking in firearms enhancement from a 4-level increase to a 5-level increase, so long as the same factors that would have justified applying the old enhancement existed. See below:

| **2021 Version of 2K2.1(b)(5) (Application Note 13)** | **2023 Version of 2K2.1(b)(5)** |
|---|---|
| (A) Subsection (b)(5) applies…if the defendant:<br><br>(i) **Transported, transferred, or otherwise disposed of two or more firearms** to another individual, or received two or more firearms with the **intent to transport, transfer, or otherwise dispose of** firearms to another individual; and<br><br>(ii) **Knew or had reason to believe that such conduct would result in the transport, transfer, or** | 2K2.1(b)(5) applies if the defendant –<br><br>(C)(i) **Transported, transferred, sold, or otherwise disposed of**, or purchased or received with the **intent to transport, transfer, sell, or otherwise dispose of**, **two or more firearms knowing or having reason to believe that such conduct would result in the receipt of the firearms by an individual who**:<br><br>(I) **had a prior conviction for a crime of violence**; |

| | |
|---|---|
| **disposal of a firearm to an individual**—<br><br>I. Whose possession or receipt of the firearm would be unlawful; or<br><br>II. Who **intended to use or dispose of the firearm unlawfully**.<br><br>(B) Definitions – For purposes of this subsection:<br><br>"Individual whose possession or receipt of the firearm would be unlawful" means an individual who:<br><br>i. **has a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence**; or<br><br>ii. **at the time of the offense was under a criminal justice sentence,** including probation, parole, supervised release, imprisonment, work release, or escape status. | (II) **was under a criminal justice sentence at the time of the offense**; or<br><br>(III) **intended to use or dispose of the firearms unlawfully**;<br><br>(C)(ii) attempted or conspired to commit the conduct described in the clause (i); or<br><br>(C)(iii) received two or more firearms as a result of inducing the conduct described in clause (i), **increase by 5 levels**. |

The Amendments also created a lesser-included 2-level increase for trafficking in firearms in situations involving only one firearm, or lack of knowledge or reasonable cause to believe that the firearm would be transferred to a specific type of prohibited person. USSG § 2K2.1(b)(5)(B).

Allen was personally responsible for straw purchasing over a dozen firearms as part of this conspiracy. Though none of those firearms were recovered from Allen or any of his co-conspirators. Instead, only a small number of these firearms have been recovered by law enforcement, in some instances from individuals with serious criminal convictions. The rest remain unaccounted for. In a scheme like this, though, that is to be expected. That is because individuals who can legally purchase firearms do so from a gun store, not by purchasing stolen guns on the street. And as one of the most productive straw purchasers in this scheme, Allen knew—or had reason to believe—that the guns he purchased would end up in the hands of people who intended to use or dispose of them unlawfully, and/or people with serious criminal convictions. For these reasons, the government believes that a 5-point enhancement under the 2023 Guideline Manual is appropriate for Allen.

However, the government also recognizes the need to avoid an *Ex Post Facto* problem with applying a newly amended guideline enhancement that would increase the defendant's guideline range at sentencing. *See Peugh v. United States*, 569 U.S. 530, 551 (2013). For this reason, the government believes that the Court should apply the 2021 Guideline Manual and apply the 4-point enhancement for firearms trafficking contemplated by 2K2.1(b)(5).

## IV. SENTENCING FACTORS, TITLE 18 U.S.C. § 3553

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution.

The most relevant factors are evaluated below, beginning with number four, the sentencing guidelines.

A. The Advisory Guideline Range

In *United States v. Rita*, 551 U.S. 338 (2007), the Supreme Court restated that the goals of the United States Sentencing Commission in formulating the Sentencing Guidelines are to carry out the objectives of 18 U.S.C. § 3553(a).

In *United States v. Gall*, 552 U.S. 38 (2007), the United States Supreme Court provided a template for sentencing proceedings in the district court. The

Court held that a district court should begin sentencing proceedings by correctly calculating the applicable guidelines. *Gall*, 552 U.S. at 49.

As noted above, the government believes that Allen' advisory guideline range is 70 – 87 months' imprisonment. That range is based upon a base offense level of 12 pursuant to USSG § 2K2.1(a)(7), enhancements for the offense involving 25 – 99 firearms (USSG § 2K2.1(b)(1)(C); the firearms being stolen (USSG § 2K2.1(b)(4)(A)); and trafficking in firearms (USSG § 2K2.1(b)(5)). That range is also based on Allen's criminal history score of 0, placing him at a level I.

B. <u>The 18 U.S.C. § 3553(a) factors</u>

*Nature and circumstances of the offense*

This was a serious offense. Allen acted as a straw purchaser in a scheme that resulted in the trafficking of dozens of dangerous weapons onto the streets. In short, Allen contributed to the proliferation of firearms in the community, which in turn generated more violence.

*History and characteristics of the defendant*

Allen has no prior criminal history, which is commendable. Nevertheless, the government still believes that a sentence at the bottom of his guideline range is appropriate considering the severity of his crimes.

*Promote respect for the law, deterrence, and protect the public*

The impact of Allen's actions in this case was tremendous. While law enforcement has recovered less than 10 guns purchased as part of this scheme, more than 40 guns remain unaccounted for. There is no telling when and where those guns will be recovered—if they ever will be. And what damage they will cause in the interim. Thus, a guideline sentence is not just appropriate, but necessary to promote respect for the law, as well as protect the public from future harm by Allen. It is also necessary to deter Allen in the future, and others considering the same criminal behavior.

## V. CONCLUSION

For the reasons stated herein, the Court should sentence Allen to a sentence at the bottom of his guideline range.

Respectfully Submitted,

Dawn N. Ison
United States Attorney

*/s/ Erin L. Ramamurthy*
Erin L. Ramamurthy
Andrew R. Picek
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9788
erin.ramamurthy@usdoj.gov

Dated: May 15, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2024. I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

*/s/ Erin L. Ramamurthy*
Erin L. Ramamurthy
Assistant United States Attorney