UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

Plaintiff,

Case No. 2:21CR20610-004
Hon. Mark A. Goldsmith

vs.

BISHOP ALLEN,

Defendant.
/

ERIN L. RAMAMURTHY
Assistant United States Attorney
211 W. Fort Street
Suite 2001
Detroit, MI 48226
(313) 226-9788
Erin.ramamurthy@usdoj.gov

GABI D. SILVER
Attorney for Defendant
1300 Broadway, Suite 500
Detroit, MI 48226
(313) 963-0210
gabidsilver@gmail.com

**DEFENDANT'S SENTENCING MEMORANDUM**

## I. INTRODUCTION

Defendant, BISHOP ALLEN, by and through his counsel, GABI D. SILVER, submits this memorandum regarding his sentencing. Mr. Allen is to be sentenced by this Court pursuant to his guilty plea to Count 1: Conspiracy to Commit Wire Fraud 18 U.S.C. § 1343 and Counts 18 through 23: Making False Statement in the Acquisition of a Firearm 18 U.S.C. § 922(a)(6), 18 U.S.C. § 924(a)(2). Mr. Allen entered this plea pursuant to a Rule 11 Agreement. The Presentence Investigation Report (PSR) calculated Mr. Allens's guidelines to be 57 to 71 months. However, the Government has recently filed a sentencing memorandum related to the scoring of Mr. Bishop's guidelines. The Government's position is that Mr. Allen's guidelines

should be scored at 70-87 months. The probation department and the Government err in their calculation of Mr. Allen's guidelines range. This Honorable Court should find his guidelines range to be 46-57 months and sentence him below these guidelines.

## II. ARGUMENT

In *United States v. Booker*, the Supreme Court held that the Federal Sentencing Guidelines are for advisory purposes only; it is merely one of many factors that must be considered when making sentence determinations. *United States v. Booker*, 543 US 220 (2005); 125 S.Ct. 738 (2005). The *Booker* Court explained that when sentencing an individual, a court is not bound by the Federal Sentencing Guidelines. *Id.* Rather, it is bound by 18 USC § 3553(a). *Id.* While the Court must still give some consideration to the appropriate Guidelines range when making a sentence determination, the Court is no longer bound by the applicable Guidelines. *United States v. Webb*, 403 F.3d 373, 381 (6th Cir. 2006). Accordingly, this Court must consider all of the factors set forth in the statute before it can appropriately determine an individualized sentence that is "sufficient but not greater than necessary." *Booker*, 543 US 220.

The sentencing statute, 18 USC §3553(a), provides in pertinent part:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;

> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
> (5) any pertinent policy statement issued by the Sentencing Commission . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

As the Sentencing Guidelines are now merely advisory, the Court may vary from the Guidelines so long as the requirements set forth in 18 USC § 3553(a) are satisfied. While it has been established that a sentence within the appropriate Guidelines range is credited with a rebuttable presumption of reasonableness, it has also been established that a sentence outside of the proposal set forth in the Guidelines range is not presumptively unreasonable. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006); *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006).

A. **18 USC § 3553(a)(1): THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT.**

Section 3553(a)(1) requires the Court to consider the history and characteristics of Mr. Allen as a relevant factor when making sentencing determinations. The policy rationale underlying this subsection is that the Guidelines do not evaluate the defendant's personal characteristics when determining a range. *Rita v. United States*, 551 U.S. 338, 357; 127 S. Ct. 2456, 2461 (2007).

**Nature and Circumstances of the Offense**

Mr. Allen has pled guilty to Count 1: Conspiracy to Commit Wire Fraud 18 U.S.C. § 1343 and Counts 18 through 23: Making False Statement in the Acquisition of a Firearm 18 U.S.C. § 922(a)(6), 18 U.S.C. § 924(a)(2). The offense conduct underlying Mr. Allen's guilty plea involves Mr. Allen acting as a straw purchaser for a larger overall scheme to purchase

firearms using stolen credit card information. Mr. Allen would allow his name to be used during the purchase of these firearms and then Mr. Allen would untruthfully complete ATF background checks in order to acquire these firearms. Mr. Allen was involved in this process to procure 14 firearms for this group from the period of November 27, 2020, to February 4, 2021.

**Personal History and Characteristics of Bishop Allen**

Mr. Allen is presently 26 years old. Mr. Allen was born and raised in Detroit, Michigan. Mr. Allen has no contact with his father, but he maintains a close relationship with his mother, Leonara Winston. Mr. Allen has one brother, Ceasar Allen, and three half-siblings.

Further, Mr. Allen currently owns his own apartment in Detroit. He graduated from Henry Ford Academy for Creative Studies in 2016 and hopes to attend college in the future. Mr. Allen is employed by "Grits N Shyt" and has worked there since September 25, 2023.

Importantly, Mr. Allen has a history of treatment for depression. Mr. Allen was first diagnosed with depression at the age of 14 at Henry Ford Hospital in Detroit, Michigan. Mr. Allen's depression has worsened due to his severe diabetes. This condition has caused him to be in and out of hospitals for treatment and is adding to his depressive state. Mr. Allen has made comments on several occasions to several individuals, including undersigned counsel and probation staff, that he has no desire to live.

**18 USC § 3553(a)(2): THE NEED FOR THE SENTENCE IMPOSED.**

Mr. Allen acknowledges the seriousness of his offense. He has pled to Count 1: Conspiracy to Commit Wire Fraud 18 U.S.C. § 1343 and Counts 18 through 23: Making False Statement in the Acquisition of a Firearm 18 U.S.C. § 922(a)(6), 18 U.S.C. § 924(a)(2). Mr. Allen takes full responsibility for his actions that led to this case and has shown so by pleading guilty.

B. **18 USC § 3553(a)(3): THE KINDS OF SENTENCES AVAILABLE.**

The difference in the guideline ranges between the Government, the Probation Department, and the defense hinges on the application of an enhancement under § 2K2.1(b)(5).

According to U.S.S.G. § 1B1.11(a), "the court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." Under U.S.S.G. § 1B1.11(b)(1), the only time a court is to use the prior version of the guidelines is when "the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution." Then, the Court shall use the Guidelines Manual from the date the offense was committed. Under *Peugh v. United States*, 569 U.S. 530, 533 (2013), "there is an *ex post facto* violation when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense."

Here, there are two versions of § 2K2.1(b)(5) at issue. In the 2021 Sentencing Guidelines, the statute reads: "If the defendant engaged in the trafficking of firearms, increase by 4 levels." Then, in the 2023 Sentencing Guidelines it is broken up into three sections and it reads:

> (5) (Apply the Greatest) If the defendant—
> (A) was convicted under 18 U.S.C. § 933(a)(2) or (a)(3), increase by 2 levels;
> (B) (i) transported, transferred, sold, or otherwise disposed of, or purchased or received with intent to transport, transfer, sell, or otherwise dispose of, a firearm or any ammunition knowing or having reason to believe that such conduct would result in the receipt of the firearm or ammunition by an individual who
>> (I) was a prohibited person; or
>> (II) intended to use or dispose of the firearm or ammunition unlawfully;
>
> (ii) attempted or conspired to commit the conduct described in clause (i); or (iii) received a firearm or any ammunition as a result of inducing the conduct described in clause
>> (i), increase by 2 levels; or

> (C) (i) transported, transferred, sold, or otherwise disposed of, or purchased or received with intent to transport, transfer, sell, or otherwise dispose of, two or more firearms knowing or having reason to believe that such conduct would result in the receipt of the firearms by an individual who
>
> (I) had a prior conviction for a crime of violence, controlled substance offense, or misdemeanor crime of domestic violence;
>
> (II) was under a criminal justice sentence at the time of the offense; or
>
> (III) intended to use or dispose of the firearms unlawfully;
>
> (ii) attempted or conspired to commit the conduct described in clause (i); or
>
> (iii) received two or more firearms as a result of inducing the conduct described in clause (i), increase by 5 levels.
>
> Provided, however, that subsection (b)(5)(C)(i)(I) shall not apply based upon the receipt or intended receipt of the firearms by an individual with a prior conviction for a misdemeanor crime of domestic violence against a person in a dating relationship if, at the time of the instant offense, such individual met the criteria set forth in the proviso of 18 U.S.C. § 921(a)(33)(C).

The Government argues that if the 2023 Sentencing Guidelines are used, Mr. Allen would qualify for an enhancement under § 2K2.1(b)(5)(C). This enhancement increases his offense level by 5 points. The Government correctly states that this enhancement cannot be used because it creates an *ex post facto* issue. This is because § 2K2.1(b)(5)(C) is 1 level higher than the 2021 version of § 2K2.1(b)(5). To avoid this *ex post facto* violation, the Government finds that this Court should instead use the 2021 Sentencing Guidelines. This is where they err.

Mr. Allen asserts that it is incorrect to use the 2021 Guidelines because § 2K2.1(b)(5)(C) does not apply to him. The facts of his case, as seen in his Rule 11 plea agreement and PSR, do not support the assertion that he knew or had reason to believe the firearms he purchased would be received by people who had a "prior conviction for a crime of violence, controlled substance offense, or misdemeanor crime of domestic violence."

According to the facts in his plea agreement, Mr. Allen gave some of the firearms to co-defendants Antonio Jackson and Mike Chahoua to possess or re-sell. Plea Agreement at 5. He also kept some of the firearms for himself. *Id.* The government argues that because Mr. Allen was “one of the most productive straw purchasers in this scheme” he had reason to know or believe the firearms would end up in the hands of someone who “intended to use or dispose of them unlawfully, and/or people with serious criminal convictions.” United States Sentencing Memorandum at 8. However, there is a lack of evidence to show that Mr. Allen had knowledge or reason to believe that the guns would be received by someone who fit these criteria simply because he was involved in this scheme.

The Government cannot point to any part of the record to show he had knowledge of what was happening beyond his role as a single strawman purchaser. This Court cannot speculate about Mr. Allen’s state of mind based on this one fact. See *United States v. Wilson*, 75 F.4th 633, 638 (6th Cir. 2023) (Finding that under FRCP 32(i)(3)(B), district courts must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute…Once the defendant calls the matter to the court's attention, the court may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence. Rather, the district court must affirmatively rule on a controverted matter where it could potentially impact the defendant's sentence, and in doing so, the district court must actually find facts, and it must do so by a preponderance of the evidence.” Failing to do this is a sentencing is error. (Internal citations and quotations omitted.)

Therefore, because the record before this Honorable Court is devoid of anything other than speculation, no increase should be assessed pursuant to § 2K2.1(b)(5)(C).

Because § 2K2.1(b)(5)(C) does not apply to Mr. Allen, it is not necessary to turn to the 2021 Guidelines like the government argues. There is no *ex post facto* issue for this Court to resolve.

The Probation Department correctly referenced the 2023 Sentencing Guidelines in assessing Mr. Allen's guidelines range. However, in doing so, they still inappropriately attributed a 2-point enhancement to his offense level. Similar to why § 2K2.1(b)(5)(C) does not apply to Mr. Allen, § 2K2.1(b)(5)(B) is not applicable either. Again, § 2K2.1(b)(5)(B) adds 2 points to the offense level if the defendant transported, transferred, sold, etc. a firearm to someone they knew or had reason to believe was a "prohibited person." A "prohibited person" means any person described in 18 U.S.C. § 922(g) or § 922(n). This includes individuals who have been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; are a fugitive from justice; are an unlawful user of or addicted to any controlled substance; have been adjudicated as a mental defective or who has been committed to a mental institution; and many more.

The Probation department states that Mr. Allen had "knowledge, intent, or reason to believe that the scheme would result in the transfer of a firearm to a prohibited person." PSR at 8. However, there is no information to support this claim. Again, the plea agreement states that Mr. Allen provided firearms to two co-defendants, including Mr. Jackson. Plea Agreement at 5. This does not mean that Mr. Allen knew if these individuals themselves were "prohibited persons" or if they were giving the guns to "prohibited persons." Therefore, to assess Mr. Allen 2 points under § 2K2.1(b)(5)(B), this

Court would once more have to speculate on the facts of this case, which is not permitted at sentencing under *Wilson*, 75 F.4th 633, 638.

Additionally, a 2-point enhancement under § 2K2.1(b)(5)(C) is not relevant either because Mr. Allen is pleading guilty under 18 U.S.C. § 1349 and 18 U.S.C. § 922(a)(6) and the statute only applies when an individual is convicted under 18 U.S.C. § 933(a)(2) or (a)(3).

In considering this analysis, the defense finds that Mr. Allen's guidelines range should be scored at 46 to 57 months, with an offense level of 23 and criminal category of 1. His Rule 11 plea agreement, which indicated that the People agree to a sentence that does not exceed the midpoint of the guidelines range, would bring the sentence to no more than 51-52 months. Plea Agreement at 11.

The Government filed a Motion for Downward Departure under U.S.S.G. § 5k1.1 to suggest Mr. Allen be sentenced to 10 months in custody. However, the defense is requesting that this Court depart from the guidelines in this case and sentence Mr. Allen below the guidelines to a probationary period. With his guidelines determined by the presentence investigation report being 57 to 71 months and the defense finding the guidelines as being between 46 to 57 months, Mr. Allen is eligible for probation. Given this finding and Mr. Allen's personal history and background, probation is most appropriate to reach the goals of sentencing.

**IV. CONCLUSION**

Mr. Allen understands the wrongfulness of his actions. Accordingly, he appreciates the need for a sentence that reflects the seriousness of his offense, promotes respect for the law, and provides just punishment for his conduct. 18 U.S.C. § 3553(a)(2). He asks that this Court consider the factors presented above as sufficient to support a sentence below the guidelines.

WHEREFORE, the Defendant, BSIHOP ALLEN, requests this Honorable Court sentence him below the guideline range to a period of probation.

Respectfully Submitted,

Dated: May 9, 2024

/s/ *Gabi D. Silver*
GABI D. SILVER
Attorney for Defendant
1300 Broadway, Suite 500
Detroit, MI 48226
(313) 963-0210

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

Plaintiff,

Case No. 2:21CR20610-004
Hon. Mark A. Goldsmith

vs.

BISHOP ALLEN,

Defendant.
_______________________________/

ERIN L. RAMAMURTHY
Assistant United States Attorney
211 W. Fort Street
Suite 2001
Detroit, MI 48226
(313) 226-9788
erin.ramamurthy@usdoj.gov

GABI D. SILVER
Attorney for Defendant
1300 Broadway, Suite 500
Detroit, MI 48226
(313) 963-0210
gabidsilver@gmail.com

**CERTIFICATE OF SERVICE**

Attorney, Gabi D. Silver, affirms, deposes and states that on May 9, 2024, she did cause to be served electronically with the Clerk of the United States District Court, Eastern District, using ECF system which will send notification of Defendant's Sentencing Memorandum filing to the following:

1. Honorable Mark A. Goldsmith
2. Erin Rmamurthy, Assistant U.S. Attorney

Dated: May 9, 2024

/s/ *Gabi D. Silver*
GABI D. SILVER
Attorney for Defendant
1300 Broadway, Suite 500
Detroit, MI 48226
(313) 963-0210